In my view, the Defendants have failed to establish that the Plaintiff was ever given a job description or a job offer. The record is clear in this case that the Plaintiff did not refuse to return to work as he was never made aware of any work that was available. Additionally, Plaintiff would be justified in refusing to return to work based on the fact that his medical condition will not allow him to do so.
At the hearing, the Plaintiff testified that he was not informed of Dr. Friedman's approval of any job description or his release of Plaintiff to return to work until April 25, 1994 and that he had never been approached with either a job description or a job offer.
THE ALLEGED JOB OFFER
As a result of Plaintiff's accident which occurred while working at IBM on April 9, 1991 he sustained compensable injuries to both his back and his head. The Plaintiff was diagnosed with post concussion syndrome as well as a Chiari malformation. This Chiari malformation is thought to be a pre-existing condition which was aggravated by Plaintiff's accident. Because Plaintiff sustained various distinct injuries, he was and continues to be treated by several different physicians.
In February of 1994 Dr. Friedman, the physician who treated Plaintiff and performed the laminectomy on the Chiari malformation in May of 1993, was given a job description for Plaintiff. This job description was presented to Dr. Friedman by Maggie Watkins, Plaintiff's personal nurse. Ms. Watkins was not Plaintiff's vocational rehabilitation nurse. It was therefore never her responsibility to find Plaintiff a job. This job description was approved by Dr. Friedman and he released Plaintiff to go to work. Plaintiff, however, was not made aware at that time of the job description or of Dr. Friedman's release of him to go to work.
The Plaintiff testified that on April 4, 1991 he did not receive his temporary total disability check. He contacted his attorneys at the time, Jim Walker and Thomas Taft of Taft, Taft and Haigler. They told him they were unaware of any reason for this and suggested that he call Liberty Mutual. Plaintiff did this the next day and was told that the payroll accountant was on vacation and he would receive two checks the following week instead of only one. When Plaintiff failed to receive any checks the following week, he again called his attorneys who again told him to contact Liberty Mutual.
At this time, Liberty Mutual told Plaintiff he would have to contact his attorneys. Plaintiff set up an appointment with his attorneys in May. However, before that appointment ever took place, his attorneys notified him over the phone that his benefits were discontinued because Dr. Friedman had released him. This took place on April 25, 1994. Upon obtaining this information, Plaintiff contacted Dr. Friedman who told him that he had reviewed and approved a job description for Plaintiff in February of 1994.
This was the first time Plaintiff heard anything about a job description. Plaintiff was terminated from IBM on August 12, 1991. Gerald Kendrick testified at the hearing that once an employee was terminated, it was not IBM's frequent practice to offer that employee another position. Mr. Kendrick also testified that an employee's actual job duties were often different from the job description.
Dr. Finkel, one of Plaintiff's other treating physicians, testified at his deposition that he had never been given a job description for review and approval. To this date, plaintiff has never received a job description or a job offer.
PLAINTIFF'S MEDICAL CONDITION
Plaintiff continues to suffer from severe headaches and occasional blackouts, as well as constant neck and arm pain. Dr. Finkel testified that Plaintiff cannot predict when these headaches or blackouts will occur, which presents a problem with Plaintiff's returning to work.
Dr. Gualtieri testified that Plaintiff's recurrence of headaches is a major problem with Plaintiff's returning to work. Dr. Finkel also testified that Plaintiff's continued pain would only allow him to function doing ordinary activities of daily living. He does not believe that Plaintiff has the ability to function at any higher level of performance. I believe this testimony.
Dr. Friedman's release of Plaintiff was based primarily on Plaintiff's condition with respect to the Chiari malformation and not Plaintiff's other injuries sustained as a result of his accident.
CONCLUSION
There is no evidence that Plaintiff was approached with a job description before his disability benefits were discontinued or at any time thereafter. There is also no evidence that Plaintiff has ever been approached with a job offer. Based on the facts adduced at the hearing and subsequent medical depositions, it is clear that Plaintiff has never received a job offer, and even if he had, his refusal would be justified. Dr. Gualtieri's testimony makes it clear that Plaintiff's treatment with Dr. Friedman was related only to the Chiari malformation. Dr. Friedman was not Plaintiff's only doctor and certainly not Plaintiff's primary physician. Therefore, Dr. Friedman's release was based primarily on Plaintiff's condition with respect to the Chiari malformation and not the additional injuries sustained by Plaintiff when he fell. While it is true that one of the three physicians treating him for injuries sustained when he fell has approved the job description, the other two treating physicians have not been given a job description for review and approval.
I believe the plaintiff is entitled to continuing temporary total disability compensation. Where multiple physicians are treating in multiple disciplines I believe it is improper to obtain a back to work order from one without at least some concurrence by the others.
My vote is to reverse the Opinion and Award of Deputy Commissioner Berger.
 S/ ___________________________ THOMAS J. BOLCH COMMISSIONER